UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:15-CR-00058-TBR

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

TERRY COTTON, *et al.*                                              DEFENDANTS

**Memorandum Opinion and Order**

This matter is before the Court upon Defendant Terry Cotton's motion for severance of counts. [Docket No. 51.] The United States has responded, [DN 52], and the time for filing a reply has passed. Cotton's motion is now ripe for adjudication. For the following reasons, Cotton's motion to sever [DN 51] is DENIED.

**Background**

On June 7, 2016, the Grand Jury returned a superseding five-count indictment against three defendants, Cynthia Allen, Terry Cotton, and Terry Jenkins. Cotton seeks a separate trial on Counts One and Three, the only counts under which he stands charged. Count One alleges:

> On or about and between November 27, 2012, and continuing through October 16, 2013, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants herein, Cynthia Allen, Terry Cotton, a/k/a Daddy O, and Terry Jenkins, knowingly and willfully combined, conspired, confederated, and agreed with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs and to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of

> health care benefit programs, in connection with the delivery of, and payment for, health care benefits, items, and services, to wit: Cynthia Allen, Terry Cotton, a/k/a Daddy O, and Terry Jenkins recruited individuals to participate in a staged automobile accident, where one vehicle intentionally struck another vehicle. Some of the participants were then directed to seek chiropractic treatment from the clinic where Cynthia Allen was employed, and were directed to seek pain management treatment, including receiving pain medication, at Injury Rehab Specialists of Lou, PLLC, where Cynthia Allen subsequently became employed. As a result of these acts, among others, automobile insurance companies were billed for and paid for unnecessary treatment at the chiropractic clinic; Injury Rehab Specialists of Lou, PLLC; and other medical providers.

[DN 39 at 1-2 (emphasis removed).] Count Three further alleges:

> On or about and between June 20, 2012, and continuing through on or about January 17, 2014, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants herein, Cynthia Allen and Terry Cotton, a/k/a Daddy O, and others, known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, confederated, and agreed with each other and with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, a mixture and substance containing a detectable amount of hydrocodone, a Schedule III Controlled Substance, as defined in Title 21, United States Code, Section 812.

[*Id.* at 3 (emphasis removed).]

Cotton argues in his motion that there is "no connection between the alleged fake incident scheme, subsequent fraudulent billing, and the hydrocodone distribution." [DN 51 at 2.] Therefore, he contends that under Federal Rule of Criminal Procedure 14(a), "[c]lear prejudice exists . . . warranting severance of counts without connection to each other." [*Id.*] In response, the United States argues that "all of the counts involve similar or overlapping conduct and arise out of

the same core of operative facts," [DN 52 at 1], and thus, Cotton's trial on Counts One and Three should not be severed.

## Discussion

Rule 8(a) of the Federal Rules of Criminal Procedure states that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). In turn, Rule 14(a) provides that if the joinder of offenses in an indictment "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). A defendant is prejudiced "if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense." *United States v. Rox,* 692 F.2d 453, 454 (6th Cir. 1982). In determining whether to grant a motion for severance, a court must balance "the interest of the public in avoiding a multiplicity of litigation and the interest of the defendant in obtaining a fair trial." *United States v. Wirsing*, 719 F.2d 859, 864-65 (6th Cir. 1983) (citation omitted). Ultimately, the decision to sever counts is within the trial court's discretion. *See United States v. Fields*, 763 F.3d 443, 456 (6th Cir. 2014) (citing *Saadey*, 393 F.3d at 678).

At this stage, the record before the Court is relatively bare, consisting of only the facts alleged in the superseding indictment. Moreover, the parties seem to dispute the extent to which Counts One and Three are related. Cotton states that there is "no connection" between the two counts, saying they are "separate and distinct" from one another. [DN 51 at 2.] The United States describes the case against Cotton and his co-defendants in more detail:

> The entire case originates out of the staged auto accident on November 27, 2012. The general theme of this case . . . is that Allen and Cotton orchestrated a staged automobile accident and funneled the participants to medical clinics associated with Allen. The participants received medically unnecessary controlled substances from the pain management clinic where Allen was employed. Allen and Cotton continued to sell controlled substances that Allen unlawfully obtained by using medical providers' DEA numbers while she was employed at the pain management clinic.

[DN 52 at 4.] Furthermore, the government states that "some witnesses from Count 1 and 3 will overlap," requiring some witnesses to testify twice if Cotton's motion is granted. [*Id.* at 4.]

Weighing in Cotton's favor is the fact that, on the face of the indictment, the time periods of the two counts do not entirely coincide. The United States alleges that Cotton and Allen conspired together to distribute hydrocodone beginning in June 2012, and continued doing so until January 2014. [DN 39 at 3.] The automobile accident scheme, meanwhile, encompassed a shorter period, from November 2012 to October 2013. [*Id.* at 1.] This seems to suggest that any conspiracy to distribute hydrocodone was at least somewhat distinct from the conspiracy to commit health care fraud.

However, the indictment also suggests that the two schemes overlapped in large part. The United States claims that "[t]he controlled substances obtained and sold [under Count Three] originated from the unlawful use of practitioners' DEA numbers from where Allen was employed and where the staged accident participants received controlled substance prescriptions." [DN 52 at 2.] Furthermore, "[m]any of the participants in the staged accident received unlawful controlled substance prescriptions from Allen and Cotton while Allen was employed at the clinic." [*Id.*] During the period in which the two conspiracies are alleged to have overlapped, then, the United States suggests that both Counts One and Three were "connected with or constitute[d] parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

The Eastern District of Michigan addressed a similar set of facts in *United States v. Chapple*, No. 09-20224, 2010 WL 940016 (E.D. Mich. Mar. 12, 2010). In that case, a doctor recruited fake patients to visit his medical clinic. *Id.* at *1. The patients were instructed to request prescription drugs with a high street value. *Id.* Clinic employees retained the prescriptions after they were written, filled them at cooperating pharmacies, and then sold the drugs to various narcotics distributors. *Id.* Defendant Neil Chapple, charged only with drug distribution-related crimes, moved to sever his trial from that of his co-defendants, who were also charged with health care fraud crimes. *Id.* He argued that, pursuant to Rule 14(a), he would "be prejudiced by a joint trial because the majority of the evidence [would] be offered to prove the health care fraud." *Id.* at *2. However, the district

5

court disagreed, and denied Chapple's motion to sever. The court wrote, "Even assuming that the majority of the Government's evidence relates to the health care fraud, and such evidence would not be admissible if Chapple were tried alone, the health care fraud evidence will not be admitted *against* Chapple; the Court will provide a limiting instruction." *Id.* at *3 (emphasis in original).

In this case, Cotton is charged with participating in two conspiracies that the United States alleges were interrelated. If severance was not warranted in *Chapple*, where the defendant allegedly participated in only one conspiracy, it is difficult to see how severance is necessary here, where Cotton allegedly participated in both. Furthermore, Cotton carries the burden under Rule 14 to show that he will be prejudiced by the joinder of Counts One and Three. He must demonstrate "compelling, specific, and actual prejudice" that he will suffer if the Court declines to sever his trial. *Saadey*, 393 F.3d at 678. But here, Cotton makes only speculative allegations of prejudice, saying that "[t]he jury *may* improperly confuse and use the evidence from one alleged drug charge to convict the defendant of additional unrelated criminal activity," and that Cotton "*could* be prejudiced by the fact that the jury would be informed of alleged unrelated misconduct when deciding guilt or [innocence] on a specific count." [DN 51 at 2-3 (emphasis added).] These "mere conclusory allegations" are insufficient to demonstrate prejudice requiring two separate trials. *United States v. Barsoum*, 763 F.3d 1321, 1337 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1883, 191 L. Ed. 2d 753 (2015) (citations omitted).

Additionally, the United States claims that, if Counts One and Three are tried separately, some witnesses will have to testify in both trials. [DN 52 at 4.] In deciding whether to grant Cotton's motion, the Court must consider not only the potential prejudice to Cotton, but also "the interest of the public in avoiding a multiplicity of litigation." *Wirsing*, 719 F.2d at 864-65. Because Cotton will face little, if any, prejudice if Counts One and Three are tried together, the Court sees no need to expend judicial and governmental resources to receive the same or similar proof multiple times.

Finally, to the extent Cotton may be prejudiced by having Counts One and Three tried alongside each other, the Court believes that such prejudice can be cured with an appropriate limiting instruction. Such an instruction should be sufficient to enable the jury "to keep the evidence from each offense separate and [] to render a fair and impartial verdict on each offense." *Rox,* 692 F.2d at 454.

## Conclusion

For the foregoing reasons, Defendant Terry Cotton's motion to sever counts [DN 51] is DENIED.

CC: Counsel of Record